This case involves the year 2000 conviction in the Massachusetts Superior Court of the petitioner here, Jose Rosario, for murder in the shooting death of one Mario Cordova. Mr. Rosario is appealing the dismissal of his habeas corpus petition in which he contends that he was denied due process at his trial by the suppression of a document consisting of a two-page letter which was sent by the prosecutor to counsel for a cooperating witness. Can we just get the procedural aspects of this? Truly. There was not a denial of a motion to suppress, was there? No, no. You're using the term suppression. I'm using the term, by that I mean the failure to disclose this letter. During the trial. During the trial. It was never disclosed by the Commonwealth. It emerged after the trial from the lawyer for the cooperating witness who disclosed it to defense counsel. So I would like to first address why this was a violation of due process and then turn to the question of why we say that none of the limitations on habeas corpus relief under section 2254 bar relief in this case. By any objective standard, this was a thin case for the Commonwealth. The petitioner was not the shooter. The Commonwealth's theory was that he ordered it. The only witnesses who put the petitioner at or near the scene of the crime were two of the persons who were actually charged with murder. And only one of those two was at the very scene of the murder. And that is the only person who testified as to what petitioner allegedly did at the scene. And this, in his testimony, was actually rather ambiguous. What he said the petitioner did was run up from behind the shooter, touch him on the shoulder and say, go, go. And the question is, you know, what did that mean? Shoot or did that actually mean go? Are you arguing that the letter should have been produced because it would have proved that an agreement had been reached, a cooperation agreement? Or are you arguing that even though it might not have proved that, it should have nevertheless been produced? Exactly. That you're arguing, as I understand it to us, the latter point. Exactly. And you're saying that the two state courts here didn't understand that you were making that point. That's right. And then here's my question. In your brief on appeal in the state court, I didn't see anything in there saying to the appellate court that the lower court misunderstood your point and you're really arguing what you just are saying now. So it raises a question. Did you, in fact, raise this argument, an exhaustion issue, to the state courts that they misunderstood? Or did you not raise it? Well, I think that I believe... You clearly raised that it would have proved there was an agreement. But I'm not seeing where you raised that it should have been produced even if it didn't prove that. Now, I wasn't in the case at that point, but I've read the pleadings. I believe it was raised in the superior court. And I believe it certainly was implicitly raised, at least in the Supreme Judicial Court, because one of the central tenets of the argument was that the failure to produce this document could have been used to reflect on the integrity of the prosecution. That has to do with simply the suppression of the evidence. The defense lawyer testified that had he been given this document, he would have tried the case a different way. He said it would have put this in an entirely new light. It seems to me he's arguing on the basis of the document. He says at that point, as it happened, when the issue of the witness's cooperation and the consideration first emerged, it only came through the testimony of the witness himself or the proffer of the witness himself and his lawyer. The judge invited the defense lawyer to say, put him back on the stand and testify. The defense lawyer said, no, I want to be able to show that they didn't give this to me because the jury is going to think this was just a matter of an afterthought. And the judge wouldn't let him do that. When the motion for new trial comes, he gets on the witness stand and he explains, if I had that, it would have put this case in a whole new light. I would have been able to show, essentially, this really showed what the Commonwealth thought of its case. Why did they need to not disclose this evidence? Didn't the trial court in ruling on that motion interpret that argument as being in an argument that it should have been produced because it shows there wasn't a cooperation agreement? And that's what you say they misunderstood. Well, yes, that's how the, I think what the trial court was doing was saying, look, this is not, there's no prejudice, no materiality here because you knew, you had a witness telling you that he believed he had been promised consideration. You have his lawyer telling you that. So, you know, what's your complaint? It's no harm, no foul. You could have put the witness on the stand. And he is saying, no, the document means something more. As your Honor said in the Flores Rivera case, there's a difference between defense lawyer knowing something and having the evidence to show it. So he's saying, if I had that letter, first of all, I could have shown it to the jury. I could have argued to the jury that there was actually an agreement. And I could have shown how this reflects on the integrity of the entire prosecution. Think about how this case would have tried if he had had the, if the letter had been given to him, with the Commonwealth denying that not only was there no agreement, there was not even any discussion about consideration. So the Commonwealth would be putting on evidence as it emerged at the new trial hearing that, no, there was never any discussion, which there clearly was, that the letter was, well, that was just something we put in the file just in case, that the only reason it was sent to the defense lawyer was because some, you know, now dead secretary sent it without authorization. This really would have deconstructed that whole case. The document, the document, and that's what that lawyer was saying in his testimony, and that's the point that was being made with the trial court and on appeal. And the misunderstanding of the trial court was that she thought, well, it's the same thing. The document and the agreement amount to the same thing. And, of course, they're not the same thing. As this court has said, as many courts have said, there's a world of difference between a document and testimony, especially testimony. On the new trial motion, the state judge, who was also the trial judge, seems to have said, in essence, yes, it may have been a bit of additional proof, but I gave you the opportunity, you defense counsel, the opportunity to raise this issue through the testimony of the defense lawyer who says there was an agreement, and you chose not to take it. And so the existence of this piece of paper really doesn't change. I gave you an offer. You could have dealt with it. You made a choice not to deal with it. She did not expressly discuss your theory about government misconduct at the time. But between that and the ruling that she would not have let in when your client's lawyer first learned about this, I'm not quite certain why she thought that was inadmissible, but those are the two rulings on which this evidence gets. Exactly, Ronna. Okay. And the reason why she said she talked about whether this proved the agreement is exactly for the point your Honor made, which is that she was finding the testimony of this person that he believed he had been promised something and the document as absolutely equivalent. And that is the fundamental mistake about the reality of the case and the mistake about what the nature of our claim was. Okay. Can we get to whether your client was in fact prejudiced by this? As I understand it, this witness sort of verified the account of some other witnesses as to generally what was going on. This witness, who may or may not have been given an agreement to help him on other charges, testified that he heard Rosario say to the companion of the decedent, I'm your worst nightmare. However, he's not the only witness who says that. There is another witness who recounts that very testimony and the prosecution, in closing, does not refer to Rosario's statement. It refers to the other witness's statement to the same effect. So Rosario's evidence is cumulative, if you will, and the jury's attention is not called to Rosario's testimony but to the other witness's testimony. I suppose you were deprived of the argument about misconduct of the DA's office, but would that have made any difference in the end to the outcome? Yes, Your Honor. Okay. I mean, first of all, there were three witnesses who testified. The first one was, and the first one who ever came up with this nightmare statement was Omo, who was the friend of the victim in the case. And then next came Burgos, who was somebody who was romantically involved or interested with Omo. So they're on one side of the case. And this guy, Rodriguez, was presented as somebody who was in this apartment to hear this conversation and heard this conversation but was there only by happenstance, was not tightly connected to any of these people, and had no motive. Then the phrase, the worst nightmare, is mentioned four times in the opening and five times in the closing. And I'm not sure it's important that the prosecutor didn't, in reciting it and repeating it and repeating it, put it in Rodriguez's words. The fact of the matter is it was essential to have these three witnesses. Another person who was right there in the room, Ms. Vasquez, said she didn't hear any such statement. And it is true that the existence of this threat, this nightmare conversation, was absolutely critical to the credibility of the Commonwealth's case. The Commonwealth could not have won this case with these two people who were charged with murder and were admitting to being involved in the murder without that testimony. So in that respect, I think it's highly material. And I might add that this material, and then, of course, as Your Honor mentioned, we were also deprived of this, I would call it the Kyle's argument, that this showed something about the government's tactics, its case, its integrity, and so forth. And this issue is to be decided by this court on a de novo basis, precisely because this claim that we're talking about the document and not whether there was an agreement, this claim was never adjudicated on the merits in any state court. And I would mention parenthetically, by the way, Judge Cayetta, I don't think the Commonwealth has ever raised an argument that we failed to exhaust. I don't think that's anywhere. But at any rate, it is true, the question of adjudication on the merits, it is true that it is presumed, rebuttably presumed, that a state court has adjudicated something on the merits, but only when the court has evaluated the rightness or wrongness of the matter. And that's what didn't happen in this case. So there can be no presumption in this case. It must be evaluated by this court de novo on its merits, and I suggest there was clearly a suppression of exculpatory evidence, and it clearly was material in those two ways. Thank you. Thank you. Good morning. Assistant Attorney General Eva Badway for the respondent. The district court properly denied the petition for writ of habeas corpus because the state court's resolution of the petitioner's due process claim was not contrary to or an unreasonable application of Supreme Court law. Ms. Badway, may I start somewhere else, please? Certainly. I'd like to quote to you from two statements the Commonwealth made in its submissions to this court. You say the Massachusetts Superior Court made a factual determination that no such agreement as to cooperation existed. That is correct, Your Honor. No, that is incorrect, and Mr. Stearns called that to your attention in his brief. You also say that they made a factual finding that no agreement was reached on page 27. That is flatly a misrepresentation of the record. The state courts avoided reaching a decision on that question. Your Honor, if I may. Yes, because I expected you to stand up here, and the first thing you were going to say was that you would like to clarify a misrepresentation contained in your briefs. Your Honor, I don't believe it was a misrepresentation in my briefs. What happened here is Mr. Rodriguez testified during the trial. That night that he testified, his defense counsel emailed the district attorney and said, what is up with my client? Immediately, the district attorney, with a different assistant district attorney, went to court the next morning to say that this witness testified believing that it was pursuant to a cooperation agreement. My concern is with your representations to this court. Your Honor, I would I don't want to spend my time here on this issue, but you will file a letter of explanation. Yes, Your Honor, I will. Ten days. Yes, Your Honor. I would like to explain, Your Honor, during the trial, the trial judge did not make a determination that there was no agreement. She made no, and I say that in my record, during the trial in the voir dire, after the witness testifies, the assistant district attorney calls the defense counsel and the witness. There is a voir dire during the trial. At this point, the trial judge does not make a determination that no agreement existed. I totally agree with Your Honor there, and I in no way represent it to the court that during the trial that they made that representation. After, during the motion for new trial, there's two different things that are going on here, Your Honor. During the trial, the trial judge does not make a determination about whether or not a cooperation agreement existed. She just says to defense counsel, you have the opportunity to cross examine, and he declines to do so.  The letter is from the district attorney's office. It has a different name in the signature block, and what she says that that letter is produced both to the district attorney and to the defense counsel. This is after trial, and the case is on appeal. At that point, a motion for new trial is held, and it is at that point that the trial judge makes the determination. But she does not, if you will go read the transcript. In any event, I do think you ought to take this time to argue your case. Thank you, Your Honor. Your Honor, a state court under the deferential review of EDPA 2254 correctly determined. I want to point out that the petitioner here is making much of the facts, and the facts have already been found by the state court. And pursuant to Teddy, his version of events do not control the factual scenario. You have to go with the state court, the Supreme Judicial Court, and the Massachusetts trial judge, Judge Page's version of what happened here. And what they say is that during the course of the trial, it came to the prosecutor's attention, and they reasonably determined these facts with a voir dire during trial and, Your Honor, with a motion for new trial, where the assistant district attorney and the defense attorney were both called. And they say that this, there was, Your Honor, there was no cooperation agreement, and that the motion for new trial judge. I understand that you dispute whether there was or there wasn't. As I read the new trial judge's determinations, she did not resolve that question. So why don't you argue your case without relying on the assumption that the state courts made a determination as to whether there was or wasn't a cooperation agreement? I don't think your case turns on this. Your Honor, the clearly established law regarding a prosecutor's duty to disclose exculpatory evidence is Brady v. Maryland. In McCambridge, this court explained that the Massachusetts standard to cheery is more favorable to defendants than the federal standard for failure to disclose evidence. For a Brady claim, if you want to establish, you have to say whether the evidence at issue was favorable to the petitioner, either it was because it was exculpatory or impeaching, whether the evidence was suppressed by the state, either willfully or inadvertently, and whether prejudice resulted. In the Massachusetts state court, the trial judge relied on St. Germain for a delayed disclosure case, and the district court... Yes, why is this a delayed disclosure, given that there was no disclosure during trial of the documentary support to the trial judges to the attorney's testimony that they were talking about cooperation? Your Honor, there was never anything in writing that the DA, after the voir dire, the defense attorney for the witness testified that there was never anything in writing during the voir dire of the witness. And then comes up with a letter that he is in his file, which tends to support that there was such an agreement. Well, what the trial judge determined was that there was the suggestion of an agreement because the agreement was not signed and it had the wrong person's name in the letter. And for that reason, the trial judge decided that, at best, it merely suggested that a deal was possible. Isn't that exculpatory? Yes, Your Honor, it is exculpatory. And isn't it material? Yes, according to Tuccieri, it is material, Your Honor. And it wasn't disclosed by the prosecution? The prosecution had testified that it did not know that the letter was sent. Okay, so your argument is it couldn't have been disclosed because the prosecution didn't have a copy of this letter in its file. No, Your Honor, that's not my argument. Your Honor, the record shows, if you go back and you look at the motion for a new trial, where the ADA testified that she could not say when the letter was sent and she could not say who sent it. She had no personal knowledge, if you read the transcript of the motion for a new trial. So they don't deny that they sent it? No, they just couldn't say who sent it or how it was sent. It was dated May of 2000, and the trial was in September of 2000. Okay. We've now gone through the Brady calculation, which gets us to prejudice. Yes. Your Honor, the jury convicted the petitioner of murder in the first degree based on the following evidence. The petitioner was a high-ranking member of the Latin King Street gang. He had a disagreement with the victim and a friend, Omo. On the night of the murder and on three other occasions, the petitioner confronted or threatened the victim and Omo. The petitioner instructed four of his subordinates to retrieve a gun and meet him where he knew the victim, as he stood in the doorway about 20 feet away. The jury heard testimony from my witnesses as well as the petitioner's subordinates who helped carry out the shooting. And for this reason, there is absolutely no prejudice. Your Honor, I apologize to this court if it believes that I misrepresented. It was never my intention at all to misrepresent what the state courts did. I know this is a very sensitive topic, and I tried to deal with it as carefully as possible. And you will have a letter in 10 days. You're relying on the fact that the state court said, after it reviewed the letter, it said, at most, there was a suggestion by the ADA that a deal was possible, and the unsigned document only substantiates the suggestion. It does not, however, prove there was an agreement? That is correct, Your Honor. And so you're reading that as saying the court actually found there was no agreement? That is correct, Your Honor. I will rest on my brief. Thank you.